IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SEKOU KEITA,                                          *

    Plaintiff,

v.                                                                     Civil Action No. 8:21-cv-00544-PX
                                                                *
GIANT FOOD LLC,

    Defendant.                                        *
                                                               ***

## MEMORANDUM OPINION

Pending before the Court in this discrimination case are the cross-motions for summary judgment filed by Plaintiff Sekou Keita, ECF No. 36, and Defendant Giant of Maryland LLC, sued incorrectly as Giant Food LLC ("Giant"), ECF No. 37. The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS summary judgment in favor of Giant.

**I.**  **Background**[1]

    **A. Factual History**

Plaintiff Sekou Keita, an African American man, started working for Giant as an Asset Protection Associate in January of 2016. ECF No. 37-2 at 13, 78. In that position, Keita was responsible for providing general, unarmed security services such as apprehending shoplifters and performing daily employee bag checks. ECF Nos. 37-3 at 7–8, 33; 37-6 at 8. Keita successfully completed the 90-day probationary period and passed a written certification

---

[1] Except where otherwise noted, the facts related below are undisputed and construed most favorably to Keita as the non-movant. *See The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

examination, at which point he was assigned a permanent post at Giant stores located in Rockville and Frederick, Maryland.  ECF No. 37-3 at 5–9.

Between August and December of 2016, Keita's direct supervisor was Bianca Bennett, and his second-level supervisor was Charles Bentley.  ECF No. 37-4 ¶ 3.  After Keita's first few months on the job, both Bennett and Bentley contacted Keita several times to ask why he was not making more apprehensions or bag checks.  On November 27, 2016, Bennett told Keita that she needed "an explanation for zero apprehensions this week and zero bag checks," noting that it was his "second week in a row with zero apprehensions."  ECF No. 36-13 at 6.  On December 19, Bennett again emailed Keita to ask for "an explanation for zero incidents" for that week.  *Id.* at 5.  Keita responded that he was trying to be cautious to avoid "causing a civil reparation to the company and harming myself."  *Id.*  On December 21, Bentley emailed Bennett that, "sooner than later," they must meet with Keita to discuss his job performance.  *Id.*

Later that same day, Keita observed that a woman using a self-service register failed to pay for bananas.  ECF No. 36-12 at 2.  As she was leaving the store, Keita confronted her and asked her to follow him upstairs to be interviewed.  *Id.*  Keita also asked the customer service clerk to check her bag for other unpaid items, and he found that she did not pay for a container of Bagel Bites and lemonade mix, in addition to the bananas.  *Id.*  In total, the unpaid items cost $9.  *Id.* at 1.

Keita next asked the clerk to void the customer's entire $111 purchase.  *Id.*  Two managers, whom Keita refers to as "Ms. LaDonna" and "Ms. Melinda," intervened so that the entire purchase would not be voided.  *Id.*  Giant management contends, and Keita agrees, that consistent with the job expectations for an Asset Protection Associate, he should not have tried to

2

void the entire sale.  ECF Nos. 37-2 at 58–59; 37-4 ¶ 10 (Bentley attesting that voiding the sale was "improper").  Keita completed a written report about the incident.  ECF No. 36-12.

Two days later, on December 23, 2016, Bennett called Keita after he failed to appear for his scheduled shift.  ECF No. 37-2 at 32–33.  Keita told Bennett that he believed he was not scheduled to work, and in any event, he was working at his other job with Enterprise Holdings.  *Id.*  Although Giant agreed that Keita could work a second job, he was expected to accord Giant priority.  ECF No. 37-3 at 25.  Bentley also called Keita to discuss his failure to appear and to schedule a meeting with him for the following day.  ECF No. 37-2 at 33–34.

Also on the same day, another Asset Protection Associate informed Bentley by email that Keita only passed the certification examination because he received help from his former supervisor, Jerry Kelly.  ECF No. 37-4 at Ex. 3.  Bentley shared this information with his supervisor, Mike Brenton.  *Id.* at Ex. 4.  Keita denied these allegations.  ECF No. 37-2 at 18.

The next day, December 24, 2016, Keita met with Bentley and Bennett in one of four counseling sessions that they held to discuss his job performance.  *Id.* at 35–36; ECF No. 37-3 at 31.  During this meeting, Bentley confronted Keita about whether he legitimately passed the certification exam and informed him that he would need to retake the test.  ECF No. 37-2 at 37.  Keita retook the exam and according to Bennett, failed it.  ECF No. 37-3 at 29.  Keita insists that no one ever told him he failed the retest, and he points out that he was permitted to return to work.  ECF No. 37-2 at 39.  Bentley also placed Keita on probation for several reasons, to include (1) not making a sufficient number of apprehensions,[2] (2) failing to conduct bag checks,

---

[2] Keita made only nineteen apprehensions in 2016, five of which resulted in recoveries of items.  ECF No. 37-2 at 97.  By contrast, another Asset Protection Associate who took the certification exam on the same day as Keita made 56 actual or attempted apprehensions during the same time period.  ECF No. 40-1 at 3.

3

(3) missing scheduled days of work, (4) not responding to emails in a timely fashion, and (5) not properly punching in to work.  *Id.* at 43, 97; ECF No. 37-4 ¶ 15.

As to Keita's scheduling issues, Bennett attested that there were at least three occasions in which Keita, after having used all his vacation days, failed to report for work without advance notice.  ECF No. 37-3 at 26.  Keita, for his part, maintains he should have never been scheduled to work on the days that he missed, but provides no other evidence to corroborate his assertion. ECF No. 37-2 at 43.  Keita also attributes his failure to punch in to machine error.  *Id.*

While on probation, on January 9, 2017, Keita failed both to report for a scheduled shift at a Giant store and to answer the phone when his supervisors called in search of him.  ECF No. 37-4 ¶ 18.  On the same day, Bentley learned about the apprehension that Keita made on December 21, which in Bentley's view was a "bad stop."  *Id.*  A "bad stop," as the term is used in the official Asset Protection Associate manual, is a wrongful apprehension of a customer. ECF No. 37-6 at 8.  Committing a "bad stop" is grounds for termination.  *Id.* at 8.

The next day, Bentley decided to fire Keita because of Keita's "poor performance," to include the bad stop, failures to report, and lack of improvement despite counseling.  ECF No. 37-4 ¶¶ 19–21.  Bennett agreed, notified Keita that he was "suspended pending termination," and informed him of the stated reasons for his termination.  *Id.*; ECF No. 37-2 at 98, 101.  Bentley also emailed his supervisor, Mike Brenton, and Maribel Dichard in Human Resources to explain the rationale for Keita's suspension pending termination.  ECF No. 37-2 at 97.  Dichard agreed with Bentley's decision to terminate Keita.  ECF No. 37-4 ¶ 23.

Several days later, on or around January 17, 2017, Keita sent a letter to Brenton that he also subsequently shared with Dichard on January 29, 2017.  ECF Nos. 37-2 at 68, 99; 36-14. Referring to the December 21 apprehension, Keita conveyed that a store manager had told him it

would be a "big problem" if the president of the company found out that Keita, who is black, stopped a white woman. *Id.* at 102; *see also* ECF Nos. 36 at 7–8; 37-2 at 72 (identifying the manager as "Ms. LaDonna"). Keita viewed this letter as his one and only "discrimination" complaint, which he admits that he never shared with Bentley. ECF No. 37-2 at 65, 72. Bentley confirmed having no knowledge of Keita's complaint when he decided to fire Keita. ECF No. 37-4 ¶ 25.

Theodore Garrett, Giant's Manager for Employment Law Compliance, investigated the allegations in Keita's letter. He found nothing to corroborate Keita's claim and no evidence of discrimination. ECF No. 37-5 ¶ 7. Accordingly, on February 28, 2017, Garrett told Keita that because no evidence supported Keita's complaint, Giant stood by its decision to fire him. *Id.* ¶¶ 7–9. On the same day, Garrett informed Brenton, Dichard, and Bentley of the results of the investigation. *Id.* ¶ 9; ECF No. 37-2 at 105.

Although the record does not precisely reflect when Keita's status changed from "suspended pending termination" to "terminated," Bentley did inform Keita by phone sometime in February 2017 of his termination; and during the February 28 conversation, Garrett confirmed for Keita that the termination would be upheld. ECF Nos. 37-2 at 70–71; 37-5 ¶¶ 7–9. The record also reflects that a "suspension pending termination" occurs when a supervisor has decided to terminate an employee, pending final confirmation from Human Resources. ECF No. 37-5 ¶ 6. It is undisputed that Keita did not work at Giant again after he was suspended pending termination.

### B. Procedural History

On January 7, 2021, Keita, proceeding pro se, filed suit against Giant, alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981. ECF No. 4. Giant then timely

noted removal to this Court and answered the Complaint. ECF Nos. 1, 6. At the initial status conference, the Court discussed with Keita whether he wished to apply for court appointed counsel. ECF No. 10. Keita subsequently submitted a financial affidavit, and the Court appointed an attorney to represent him. ECF Nos. 12, 15–17. Counsel assisted Keita through the close of discovery, but ultimately sought permission to withdraw, which this Court granted on March 16, 2022. ECF Nos. 26 & 29. After efforts at mediation failed, the parties cross moved for summary judgment. ECF Nos. 36 & 37. For the following reasons, Giant's motion must be granted and Keita's must be denied.

## II.     Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)) (alteration in original). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

> III.   Analysis
>
> A. Keita's Motion

Keita's motion, although styled as one for "summary judgment," is effectively a preemptive response to any suggestion that summary judgment in Giant's favor is appropriate. ECF No. 36 at 11 (arguing that "the motion for dismissal…should be rejected" and that the case "cannot be dismissed…due to unresolved issues during the discovery."). In fact, Keita expressly asks in a later filing that the Court "send this case to trial." ECF No. 40 at 1. Accordingly, to the extent that the motion raises issues pertinent to Giant's summary judgment motion, the Court will consider them as part of Keita's formal response.

Additionally, construing the pleading most generously to Keita, he appears to argue that Giant did not comply with discovery. Keita obliquely alleges that unnamed witnesses failed to provide "truthful" answers; that counsel cited attorney-client privilege to an "unnecessary" degree; and that documents were "suppressed." ECF No. 36 at 11, 13. Keita essentially asks for discovery to resume. *Id.* at 11.

A motion to reopen discovery will be granted only where the movant establishes "good cause" to modify a scheduling order under Federal Rule of Civil Procedure 16(b)(4). *Edwards v. Edwards*, No. DKC-12-3761, 2014 WL 1573504, at *3 (D. Md. Apr. 18, 2014). "The primary consideration of the court in addressing whether good cause has been shown under Rule 16(b) relates to the movant's diligence." *Id.* (quotation omitted). Although a non-movant at summary judgment can request that formal discovery precede any summary judgment decision by filing a declaration pursuant to Federal Rule of Civil Procedure 56(d), "nonmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to."

*McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014); *see also Mikeron, Inc. v. Exxon Co., U.S.A.*, 264 F. Supp. 2d 268, 275 n. 4 (D. Md. 2003).

Keita has not presented any grounds for reopening discovery that has long since closed. Although Keita now complains of Giant's shortcomings, he never sought any relief during the discovery period which had been extended twice. ECF Nos. 20 & 24; *see also Mikeron*, 264 F. Supp. 2d at 275 n. 4. Because Keita had a reasonable opportunity to discover "facts essential to justify [his] opposition," the Court denies any request to reopen discovery now. Fed R. Civ. P. 56(d); *see also McCray*, 741 F.3d at 484.

The Court next turns to Giant's summary judgment motion.

### B. Giant's Motion for Summary Judgment

#### 1. Discrimination

Giant first contends that no evidence supports Keita's discrimination allegation. ECF 37-1 at 21. Keita avers that Giant made him retake the certification examination and fired him because he is black, in violation of 42 U.S.C. § 1981. ECF No. 4 ¶¶ 17, 32, 34. Courts analyze Section 1981 claims of racial discrimination in the employment context under the same requirements as claims brought under Title VII of the Civil Rights Act of 1964. *See Gairola v. Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *Bowling v. Humanim, Inc.*, No. JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017). Absent direct evidence of discrimination, the claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas,* a plaintiff must first make a prima facie showing that he (1) is a member of a protected class; (2) who performed his job in a satisfactory manner; and (3) suffered an adverse employment action in a manner that (4) gives rise to an inference of discriminatory animus. *See Bing v. Brivo Sys.,*

8

*LLC*, 959 F.3d 605, 616 n. 8 (4th Cir. 2020). The burden of establishing a prima facie case under *McDonnell Douglas* is "not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Once the Plaintiff makes the prima facie showing, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its conduct. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden next shifts back to the plaintiff to show that the defendant's stated rationale is pretextual. *Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 742 (D. Md. 2021). Although no one mechanism exists for establishing pretext, a plaintiff must produce some evidence that the stated reasons are merely a cover for discrimination. *See Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

In urging the Court to grant summary judgment in its favor, Giant focuses on its legitimate, nondiscriminatory reasons for firing Keita, and that Keita has adduced no evidence that the grounds were pretextual.[3] The record unquestionably establishes that Giant's stated reasons for firing Keita—poor performance, failure to report to work, and the December 21 "bad stop"—provided ample nondiscriminatory cause to terminate Keita. ECF No. 37-4 ¶¶ 19–21. Keita failed to report for work on at least three occasions after he had used all of his vacation time. ECF No. 37-3 at 26; *see also* ECF Nos. 37-2 at 32–33; 37-4 ¶ 18. Likewise, the record supports that Keita had been forewarned on multiple occasions before the December 21 stop that his low apprehension rate and failure to conduct required bag checks fell below Giant's employment expectations. ECF No. 36-13 at 5–6. As a result, Giant warned him, placed him on

---

[3] Although Keita separately avers that being forced to retake the certification exam constituted discrimination, the mere requirement of sitting for an examination is not sufficiently adverse to sustain the claim, given that satisfactory performance on the exam was a prerequisite for Keita's job. *Cf. Boone v. Goldin,* 178 F.3d 253, 255–56 (4th Cir. 1999) (finding that an adverse employment action is an action that results in a "tangible" harm akin to "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").

probation, and, when his performance did not improve, decided to terminate him. ECF No. 37-4 ¶¶ 15, 19. Last, the record reflects that the December 21 apprehension, marred by the attempted voiding of a $111 sale, qualified as a "bad stop" which itself is grounds for termination. ECF Nos. 37-2 at 58; 37-4 ¶ 18. Accordingly, ample evidence exists that Keita had been fired for legitimate, non-discriminatory reasons.

As for pretext, Keita has failed to adduce any evidence that Giant fronted these reasons as a cover for its true discriminatory motive. Although Keita takes issue with why he failed to post for work and why he could not punch in properly, the disputes amount to little more than disagreements over the general fairness of Giant's decision. ECF Nos. 37-2 at 43; 40 at 13. But nothing about those disagreements gives rise to a plausible inference that Keita had been fired because he is black.[4]

Keita comes closest to establishing pretext when he suggests that the real reason for his termination was his apprehension of a white woman during the "bad stop." ECF No. 36 at 15. However, nothing in the record supports that any of the decisionmakers considered the race of the customer who was apprehended when they decided to fire Keita. Certainly, Keita had not mentioned her race in the report he authored at the time of the stop. ECF No. 36-12. As for the letter that Keita submitted to Brenton in which he, for the first time, suggests race played a factor, Keita submitted the letter *after* Bentley decided to fire him. ECF No. 37-2 at 68, 99. Accordingly, the information included in that letter could not possibly have entered into the decision-making calculus of Bentley, who initiated Keita's termination. Thus, when viewing the record as a whole and most favorably to Keita, no evidence supports that Giant's stated reasons

---

[4] Keita also suggests that he had generally received "praise[]" for his work. ECF No. 40 at 8. But nothing in the record, such as favorable performance reviews or other similar evidence, supports this claim.

10

for his termination were a pretext for race discrimination. Summary judgment must be granted in Giant's favor on this claim.

### 2. Retaliation

The retaliation allegation fails for similar reasons. Keita alleges that Giant terminated him because he had complained to Brenton in writing about being adversely treated for apprehending a white woman. ECF No. 4 ¶¶ 30, 34; ECF No. 40 at 22–23. A retaliation claim, too, is subject to the *McDonnell Douglas* burden shifting framework. *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012). A plaintiff must first make out a prima facie case by showing (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse action against him; and (3) a causal connection exists between the two. *Smith v. CSRA*, 12 F. 4th 396, 416 (4th Cir. 2021). If a plaintiff establishes a prima facie case, the employer must articulate a non-retaliatory reason for the action. *Id.* If the employer makes such a showing, the burden shifts back to the employee to demonstrate that the stated reason for the adverse action is pretextual. *Id.*

Giant does not dispute that Keita's letter to Brenton constitutes protected activity, nor that Keita's termination was an adverse action. Rather, Giant argues that Keita has not demonstrated any causal connection between his termination and his submission of the letter. ECF No. 37-1 at 29–31. The Court agrees. For protected activity to have caused an adverse action, it must, at a minimum, precede the adverse action. *Gibson v. Marjack Co., Inc.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010). Here, Bentley decided to terminate Keita on January 10, 2017. ECF No. 37-4 ¶ 19. From that date, Keita was off the job. Keita does not send his letter to Brenton until some seven days later. ECF No. 37-2 at 68, 99. Thus, no rational factfinder could conclude that Keita's complaint impacted at all Bentley's decision to terminate him. And it is immaterial that

Dichard later received a copy of the letter because the termination process had already been initiated.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (Even where an employer learns of protected activity, its "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Swigert v. Broadway Servs., Inc.*, No. RDB-08-1139, 2009 WL 2139711, at *10 (D. Md. July 15, 2009) (finding that the termination decision of an immediate supervisor, as the "principal decisionmaker," is the "critical point of reference in the causality inquiry," such that the role of a secondary approver is immaterial).  Because no genuine issue exists for trial on this essential element of Keita's claim, summary judgment is warranted in favor of Giant.

Alternatively, even if Keita could establish a causal connection between his protected activity and his termination, he fails to adduce any evidence that Giant's non-retaliatory reasons for firing him were pretextual.  Keita must show not only that Giant's stated reason for the termination is false, but also that retaliation was the "but-for cause" of the termination.  *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015).  As discussed, no evidence suggests that Giant's stated reasons for terminating Keita were false, or that retaliation was the real reason that Keita was let go.  ECF No. 37-4 ¶¶ 19–21.  Accordingly, the Court must grant summary judgment to Giant.

**IV.    Conclusion**

For the foregoing reasons, Keita's motion, construed as one to reopen discovery, is denied, and Giant's motion for summary judgment is granted.  A separate Order follows.

| | |
|---|---|
| 2/16/2023 | /S/ |
| Date | Paula Xinis<br>United States District Judge |